UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JASON RIBAUDO,

    Plaintiff,       Case No. 2:17-cv-7207
               Magistrate Judge Norah McCann King

 v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jason Ribaudo for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.  PROCEDURAL HISTORY

   On October 16, 2012, Plaintiff filed an application for benefits, alleging that he has been disabled since August 28, 2012, due to a number of physical and mental impairments. R. 216–21, 240. Plaintiff's application was denied initially and upon reconsideration. R. 109–13, 117–

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

18. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 119–21.

Administrative Law Judge Beth Shillin ("ALJ") held a hearing on August 25, 2015, at which

Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R.

31–85. In a decision dated February 18, 2016, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act since October 16, 2012, the date the application

was filed. R. 19. That decision became the final decision of the Commissioner of Social Security

when the Appeals Council declined review on July 18, 2017. R. 1–6. Plaintiff timely filed this

appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 6, 2019, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 33.[2] On March 11, 2020, the case was

reassigned to the undersigned. ECF No. 40. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the

burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 37 years old on the date the application was filed. R. 18.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 16, 2012, the date the application was filed. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: carpal tunnel syndrome of the right hand, a learning disability, degenerative disc disease of the cervical spine with mild cervical radiculopathy, a herniated disc at L3-4, an annular tear at L4-5, a right rotator cuff tear, and asthma. *Id*. The ALJ also found Plaintiff's diagnosed impairment of intussusception was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 12–14.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 14. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a groundskeeper, carpenter's helper, telemarketer, mixer of paints, packager, and route driver's helper. R. 17–18.

At step five, the ALJ found that a significant number of jobs–*i.e*., approximately 18,000 to 20,000 jobs as a final assembler of non-prescription optical goods and approximately 10,000 to 12,000 jobs as a lens inserter of non-prescription eyewear–existed in the  national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 18–19. The ALJ therefore concluded that Plaintiff was not disabled within

the meaning of the Social Security Act since October 16, 2012, the date the application was filed, through the date of that decision. R. 19.

Plaintiff disagrees with the ALJ's findings at steps two through five as well as the ALJ's failure to issue a subpoena for medical records and the ALJ's evaluation of Plaintiff's subjective complaints. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 23; *Plaintiff's Reply Brief*, ECF No. 39. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 27.

For the reasons that follow, the Court affirms the Commissioner's decision.

## IV.   DISCUSSION

### A.   Plaintiff's Subpoena Requests and Development of the Record

Plaintiff first argues that the ALJ failed to subpoena certain medical records despite two requests from his former counsel, Robert J. Wertalik, Esq. *Plaintiff's Brief Pursuant to Local Rule 9.1.*, ECF No. 23, pp. 14−16; *Plaintiff's Reply*, ECF No. 39, pp. 1−3. According to Plaintiff, his former counsel[3] sent to the ALJ two requests for the issuance of a subpoena of records before the administrative hearing conducted on August 25, 2015: the first request on May 18, 2015, and the second request on July 31, 2015. *Id*. The May 18, 2015, request sought records from Hackensack University Medical Center relating to multiple emergency room visits from March

---

[3] Attorney Wertalik represented Plaintiff in the underlying administrative proceedings. Plaintiff advises that this counsel passed away unexpectedly on July 28, 2017, and his law practice was dissolved. *Id*. at 16.

8

2, 2010, through March 17, 2015, and two admissions. *Id.*; *see also* R. 376−94 (containing Exhibit 13F, and reflecting Attorney Wertalk's May 18, 2015, letter and face sheets for eighteen emergency room visits)). Plaintiff goes on to state that "[t]he July 31, 2015 request for subpoena is not present in the record and it is therefore unknown to present counsel what was requested in that correspondence." *Plaintiff's Brief Pursuant to Local Rule 9.1.*, ECF No. 23, p. 14. Plaintiff contends that the ALJ failed to adequately address the subpoena request and, therefore, failed to fairly develop the evidentiary record in violation of the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX"). *Id.* at 14−16 (citing HALLEX § I-2-5-78(D));[4] *Plaintiff's Reply*, ECF No. 39, pp. 1−3. Plaintiff's arguments are not well taken.

    As a preliminary matter, "as an internal manual, HALLEX does not have the force of law[.]" *Moraes v. Comm'r Soc. Sec.*, 645 F. App'x 182, 186 (3d Cir. 2016) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (stating that the HALLEX "has no legal force, and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees"); *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (concluding that HALLEX does not impose "judicially enforceable duties")). Accordingly, a failure to comply with HALLEX does not serve as an independent basis for remand. *See id.*; *see also Chaluisan v. Comm'r Soc. Sec.*, 481 F. App'x 788, 791 (3d Cir. 2012) ("Internal social security manuals lack

---

[4] HALLEX § I-2-5-78(D) provides as follows:

> If an ALJ denies a claimant's request for a subpoena, the ALJ must notify the claimant of the denial, either in writing or on the record at the hearing. In either situation, the ALJ will enter the request into the record as an exhibit. If the denial is in writing, the ALJ will also enter the denial notice into the record as an exhibit. Whether on the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena.

HALLEX § I-2-5-78(D), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-78.html (last visited Aug. 23, 2020).

the force of law and do not bind the Social Security Administration.") (citations omitted); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (stating that HALLEX "lack[s] the force of law and create[s] no judicially-enforceable rights") (citations omitted); *Ungemach v. Comm'r of Soc. Sec.*, No. 1:18-CV-04987, 2019 WL 3024858, at *4 (D.N.J. July 11, 2019) (stating that the Court "quickly rejects" Plaintiff's request for appeal based on a failure to follow HALLEX because it is "not [an] independent ground[] for reversal").

In any event, the Court agrees with Defendant, *see Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 27, pp. 12−16, that it does not appear that any subpoena request remained pending by the time the ALJ issued her decision.[5] At the administrative hearing conducted on August 25, 2015, the ALJ discussed with Plaintiff's former counsel subpoenaing records from Hackensack University Medical Center (relating to the subpoena May 18, 2015, request). R. 34−37. After the ALJ pointed out that it was counsel's responsibility to subpoena the records, counsel ultimately agreed to contact the treating physicians or at least get back with the ALJ within two weeks to advise on the status of his request for records:

> ALJ: Okay. Counsel, have you had an opportunity to review the exhibits in this file?
>
> ATTY: I have, Your Honor.
>
> ALJ: And do you have any objections to any of those exhibits?
>
> ATTY: Judge, the only thing I have a concern with is, there is one exhibit -- I believe it is 12-F -- which gives some information about various times that Jason has been treated at Hackensack University Medical Center. I stand corrected.
>
> ALJ: 13-F, I--

---

[5] Defendant disputes any assertion that Plaintiff's former counsel actually sent a subpoena request on July 31, 2015. *See id.* at 12−13 n.5. Plaintiff, however, insists that her former counsel sent such a request on that date. *Plaintiff's Reply*, ECF No. 39 at 1−2. The Court assumes for present purposes only that Plaintiff's former counsel sent a subpoena request on July 31, 2015.

ATTY: 13-F.

ALJ: Right.

ATTY: Yeah. I have your correspondence on that. I mean, that's all we have, at this point. We had asked the Court to subpoena the records, but there are a number of visits there that really are unaccounted for, in terms of the actual hard evidence.

ALJ: Well, there are a couple things about that. One is the cover sheets that you gave me go all the way back to 2010. However, the onset date is in 2012. And that would greatly reduce the amount of the records that you're looking for, that we would need--

ATTY: Okay.

ALJ: -- to review--

ATTY: It still might be probative, Judge.

ALJ: -- and/or subpoena. The other thing is, is that as a representative, it's really your responsibility to subpoena those records, or at least to show that you've made every attempt possible to get them and have not been able to. I would be happy to sign a subpoena that's returnable to you, if you think that would go anywhere with the hospital, have any weight. I took a quick look at those cover sheets, and I think a lot of what may or may not be in those records is fairly well covered by -- at least in terms of complaints -- is covered by the other medical information that you provided. I have the bilateral rotator cuff tear surgery from 2014; herniations. I'm not really certain what's in there, that you feel would be important. I will--

ATTY: I wouldn't know until I saw it, Judge. That's my dilemma.

ALJ: I will entertain, if as I said, I'd be happy to sign a subpoena that's returnable to you, if you think that that would help you in obtaining the records. If there's anything in particular that you – let's see, I'm just looking at these. There's some blood tests, 2012. It's not clear what these were for. I see there's a July 4th, 2012 discharge; July 5th, 2012 EV visit. There's nothing in here that seems to discuss what the nature of the visit was. Then another visit on July 13th of 2012; one of January 2013.

The only thing that I would suggest, Counsel, you may want to contact the treating physicians and see if you can get their records.

ATTY: And we have responses from the some of the offices. Records have been destroyed. And I know those go back quite some time. But, basically, what we have is because that's what we did.

11

ALJ: Right. Now, when I say the treating physicians, I mean the -- really, the attending provider within the hospital. There's various -- some of these actually give the physician who examined your client. You might be able to get the records from there, rather than get the whole mass of hospital records.

ATTY: Maybe we could defer on this, Judge, till the end of the hearing, and then--

ALJ: Why don't we take this under advisement. If you want to pursue it, I suggest that you send me information as to all situation is [sic].

ATTY: All right. Do you want to put a timeframe on that, then?

ALJ: I'd like to do it within about two weeks, if you could, Counselor. Or at least get back in touch with my office in a couple weeks and let me know where things stand.

ATTY: Okay.

ALJ: If you need more time beyond that, I will give you more time.

ATTY: Okay. Thank you.

*Id*. Although Plaintiff's counsel referred to a subpoena request dated May 18, 2015, he did not refer to any subpoena request dated July 31, 2015, nor did counsel otherwise advise that such later request remained outstanding. *See id*. At a later point in the hearing, the ALJ advised that she would also need records from Kenneth Zierer, M.D., who had apparently treated Plaintiff in connection with esophageal candidiasis. R. 57–58. At the end of the hearing, the ALJ stated as follows: "I think I have a fairly clear picture, which will no doubt be enhanced when I receive some additional medicals." R. 84.

In her decision dated February 18, 2016, the ALJ noted that she had left the record open for two weeks for the submission of additional records, but "nothing was forthcoming." R.10. Although Plaintiff's former counsel later complained in a June 20, 2016, letter to the Appeals Council that the ALJ never ruled on his subpoena requests, R.276, the discussion between counsel and the ALJ at the hearing, as detailed above, reflects that they had agreed to another

arrangement that superseded the subpoena request, namely, that Plaintiff's counsel would attempt to obtain the records and send them to the ALJ within two weeks or advise the ALJ of the status of his attempts. R. 34–37. The record does not reflect that former counsel did either. Under these circumstances, the ALJ did not err in declining to issue a subpoena.. *See King v. Colvin*, No. CV 15-541, 2016 WL 5660231, at *5 (W.D. Pa. Sept. 29, 2016) (rejecting the plaintiff's assertion that the ALJ erred when he failed to issue a subpoena where counsel agreed at the administrative hearing to submit information to the ALJ, but "nothing in the record indicates that plaintiff's counsel provided the ALJ with the requested information so that he could determine whether it was appropriate to issue a subpoena"); *cf. Roberts v. Colvin*, No. CIV. 14-51, 2014 WL 5021336, at *2 (W.D. Pa. Oct. 8, 2014) (affirming where, at the administrative hearing, the plaintiff "offered to obtain his file from Dr. Baird at his upcoming appointment" and that "if Dr. Baird would not provide the records, the plaintiff may have to subpoena the records" but "[d]espite the fact that Plaintiff was apparently unsuccessful in his attempt to procure the records from Dr. Baird, neither Plaintiff nor his counsel requested a subpoena at any time after the hearing").

Plaintiff also complains that the ALJ "was under a duty to fully and fairly develop the evidentiary record" and that, if "the ALJ is still unable to obtain substantial evidence from treating sources, the ALJ has the duty to order a consultative examination." *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 16. Plaintiff's argument is not well taken. The ALJ retains the discretion, not the duty, to order a consultative examination. *See* 20 C.F.R. § 416.920b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense") (emphasis added); *see also*

*Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontract treating sources and stating that "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method"). Here, the ALJ reasonably exercised her discretion in deciding that she had sufficient information to make a disability determination. R. 10. Plaintiff does not explain in what way the record was deficient and therefore required a specific consultative examination or how such consultative examination would have changed the outcome of the ALJ's decision. *See generally Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23; *Plaintiff's Reply*, ECF No. 39. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf. Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We

need not address this conclusory, undeveloped accusation.") (citations omitted). Based on this record, Plaintiff has not shown any error or, at most, only harmless error that does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

## B.   Exhibits in the Record

Plaintiff further argues that the ALJ erred by failing to provide "a complete exhibit file" in violation of HALLEX § I-2-1-20.[6] *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 16 (arguing generally that Plaintiff's current counsel "is unable to duplicate all correspondence that OHO [Office of Hearings Operations] misplaced or failed to enter in record" and referring to "correspondence requesting subpoenas"); *Plaintiff's Reply*, ECF No. 39, pp. 1−3. However, as previously discussed, HALLEX is simply an internal manual that does not have the force of law and which does not impose judicially enforceable duties and, therefore, does not serve as an independent basis for remand. *Schweiker*, 450 U.S. at 789; *Moraes*, 645 F. App'x at 186; *Chaluisan*, 481 F. App'x at 791; *Bordes* v, 235 F. App'x at 859. In any event, Plaintiff's former counsel did not advise the ALJ at the hearing that any exhibits, including, *inter alia*, his subpoena request dated July 31, 2015, was missing from the record. R. 34−35 (reflecting Plaintiff's former counsel's statement that "the only thing I have a concern with" is the May 18,

---

[6] HALLEX § I-2-1-20 addresses preparation of a proposed exhibit list before and after the administrative hearing. *See id*. at § I-2-1-20(B)(3) ("When an ALJ issues a less than fully favorable decision, preparing the exhibit list in final form is mandatory and is not a discretionary practice."), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-20.html (last visited August 23, 2020).

2015, subpoena request relating to records from Hackensack University Medical Center), 37

(reflecting the ALJ's question to Plaintiff's former counsel if there are "any other objections to

any other . . . evidence in the record" and counsel's response, "Not really, Judge"). Based on this

record, the exhibit file will not serve as a basis for remand. *See Newman v. Comm'r of Soc. Sec.*,

No. 2:11-CV-02724, 2014 WL 1217955, at *15 (D.N.J. Mar. 21, 2014) (rejecting the plaintiff's

argument that the exhibit list was deficient because it did not include all the exhibits where such

objection was not raised at the hearing and where the plaintiff did not show that the ALJ's

exhibit list was deficient or that she suffered any harm by not having the missing exhibits

included); *Raja v. Comm'r of Soc. Sec.*, No. 2:11-CV-01755, 2012 WL 2871185, at *3 (D.N.J.

July 12, 2012) (rejecting as "meritless" the plaintiff's argument that the ALJ violated HALLEX

by failing to include an exhibit to the exhibit list).

### C.  Appeals Council Review

Plaintiff next contends that "[t]he Appeals Council's failure to review and/or failure to

proffer the records of Dr. Zierer, the GI specialist, which prior counsel apparently submitted with

his June 20, 2016 Appeals Council brief, was not harmless error" in violation of HALLEX.

*Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 16–17 (citing R. 276 and HALLEX

§ I-2-6-58).[7] Plaintiff's argument is not well taken.

Again, HALLEX does not impose judicially enforceable duties and will not serve as an

independent basis for remand. *Schweiker*, 450 U.S. at 789; *Moraes*, 645 F. App'x at 186;

*Chaluisan*, 481 F. App'x at 791; *Bordes* v, 235 F. App'x at 859.

---

[7] HALLEX § I-2-6-58 addresses the admission of evidence submitted at least five business days
before the hearing, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-58.html (last visited Aug.
23, 2020).

Moreover, the record does not clearly establish that Plaintiff's former counsel actually submitted Dr. Zierer's medical records to the Appeals Council. Although counsel's June 20, 2016, letter to the Appeals Council represents that he is submitting such records, *see* R. 276, the Appeals Council did not confirm that it received the records from Dr. Zierer. R. 1 (referring to receipt of counsel's "reasons that you disagree with the [ALJ's] decision[,]" which are summarized at R. 273, but not referring to additional records). The record also contains a certification that the record is "full and accurate[.]" ECF No. 7, PAGEID # 37. In addition, as Defendant points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 27, p. 17, a "passing reference" in former counsel's letter to the Appeals Council, R. 276, does not unquestionably alert the Appeals Council that counsel possessed evidence that should have been, but was not, included in the record.

In any event, even assuming that Plaintiff's former counsel had submitted records from Dr. Zierer to the Appeals Council, Plaintiff has not shown that such records require remand. "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001); *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that the court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (explaining that evidence is "material" when it is "relevant and probative"); *Volage v. Astrue*, No. 11-CV-4413, 2012 WL 4742373, at *10 (D.N.J. Oct. 1, 2012)

17

("Evidence is material when it is probative and relevant to the time period, and creates the reasonable possibility that it would have changed the outcome."). Here, in his moving brief, Plaintiff merely asserts that the Appeals Council committed a procedural error without explaining why this error was not harmless. *See Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 16–17. Notably, Plaintiff does not ask for remand based on sentence six of 42 U.S.C. § 405(g); he seeks a remand based only on sentence four. *See id*. at 28. Accordingly, where Plaintiff has failed to explain how any procedural error on the part of the Appeals Council in this regard harmed him, and has failed to even request a sentence six remand, the Court finds that remand is not warranted. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553.

After Defendant observed that Plaintiff has not shown or even argued that Dr. Zierer's records are new or material justifying a sentence six remand, *see Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 27, pp. 17–19, Plaintiff argued for the first time in his *Reply* that Dr. Zierer's records were new and material, warranting remand. *Plaintiff's Reply*, ECF No. 39, pp. 1–3. Plaintiff also asked for the first time for a sentence six remand. *Id*. at 7. However, the Court need not address arguments raised for the first time in a reply brief. See *United States v. Kolodesh*, 787 F.3d 224, 230 n.3 (3d Cir. 2015) ("In support of the arguments raised in his opening brief, Kolodesh raises several new contentions in his reply brief. Those are waived and we do not address them further."); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *Wright v. Comm'r of Soc. Sec.*, No. CV 15-6217, 2016 WL 5429649, at *5 (D.N.J. Sept. 27, 2016) (refusing to consider newly-raised argument in the reply brief and citing *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20,

2009) ("It is hornbook law that arguments raised for the first time in a reply brief are waived[.]")).

Nevertheless, even if the Court were to consider Plaintiff's belatedly raised arguments, they are still unavailing. Plaintiff simply refers to Dr. Zierer's records on the first page of the reply brief and later quotes from the *Matthews* case regarding new and material evidence, but does not articulate any connection between the two, nor does he explain why these records are material. *See Plaintiff's Reply*, ECF No. 39, pp. 1–3. Plaintiff's conclusory argument in reply is therefore insufficient to establish a basis for remand. *See Atkins* 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245. This conclusion is particularly inevitable where Plaintiff does not explain, or even allege, that consideration of Dr. Zierer's records would have led to a different result. *See generally Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23; *Plaintiff's Reply*, ECF No. 39; *see also* R. 276. Notably, Plaintiff does not identify esophageal issues and/or cyclic vomiting—the conditions that Dr. Zierer purportedly treated, R. 52—as severe impairments in his arguments before the Appeals Council. R. 276. Moreover, Plaintiff did not identify these records or issues when arguing that the ALJ purportedly ignored certain crucial evidence. R. 277. For all these reasons, Plaintiff has not shown that the Appeals Council's review was deficient or otherwise warrants remand.

### D.   Treating Physicians

Plaintiff also argues that "it is unjustifiable that the ALJ would fail to credit or give great weight to treating specialists, including Drs. Kreibich, El-Khashab and Valdez[.]" *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 18; *see also id.* at 17–19.[8] In reply, Plaintiff

---

[8] To the extent that Plaintiff complains that the ALJ erred in consideration of Plaintiff's school records, including the findings of Marcia Chotiner, L.D.C., and his purported learning disabilities, *see id.* at 18–19, the Court addresses that matter later in this Opinion and Order.

complains for the first time[9] that the ALJ erred in her evaluation of the reports of Binod Sinha, M.D., Igor Zilberman, M.D., Stephen J. Conte, D.O., Arien Smith, M.D., and Minesh Patel, PA-C. *Plaintiff's Reply*, ECF No. 39, pp. 4–6. Plaintiff's arguments are not well taken.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The

_____

[9] The Court will consider these arguments even though it need not address arguments raised for the first time in a reply brief. *See Kolodesh*, 787 F.3d at 230 n.3; *Pelullo*, 399 F.3d at 222; *Wright*, 2016 WL 5429649, at *5.

ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 416.927(c)(1)–(6); *see also* SSR 96-2p.[10] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec*., 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Finally, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]'" *Chandler*, 667 F. 3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).

---

[10] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017), and SSR 96-2p was rescinded. Plaintiff filed his claim on October 16, 2012.

Here, Plaintiff simply lists the names of providers and their treatment or findings without any explanation as to how the ALJ's alleged errors harmed him or affected the outcome of the case. *See Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 17−19; *Plaintiff's Reply*, ECF No. 39, pp. 4−6. Plaintiff's undeveloped assertions therefore do not serve as a basis for remand. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553. For example, Plaintiff notes that a MRI of his right shoulder revealed a "tear in the supraspinatus tendon, glenohumeral joint effusion, fluid in the subdeltoid bursa and acromioclavicular joint, and right rotator cuff impingement, subsequently surgically repaired by Dr. Valdez on December 10, 2014." *Plaintiff's Reply*, ECF No. 39, p. 4. However, the ALJ specifically considered this evidence and procedure performed by Napoleon A. Valdez, M.D., R. 16−17, and Plaintiff provides no other explanation or argument as to how the ALJ erred or how the alleged error adversely affected the outcome of the case. The Court will not construct Plaintiff's arguments for him. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

Similarly, Plaintiff notes the care provided by Binod Sinha, M.D., and Minesh Patel, PA-C, of the Garden State Pain Control Center, which included physical therapy, administration of pain medications, and ordering epidural cervical injections, and which he argues are "consistent with a severe cervical radiculopathy and herniated discs causing pain." *Plaintiff's Reply*, ECF

No. 39, p. 5.[11] However, the ALJ specifically considered this evidence, noting Plaintiff's diagnoses of cervical radiculopathy and carpal tunnel syndrome and noting that his care consisted of oral analgesics and epidural injections. R. 15−16. Notably, the ALJ did not reject this evidence but specifically noted that conservative therapy was considered adequate to treat Plaintiff's symptoms, R. 16. Indeed, Mr. Patel noted that Plaintiff's use of opioid medication resulted in improved analgesia, increased activity level, without  aberrant behavior or adverse side effects, R. 295, 299. Moreover, Plaintiff does not identify any limitations articulated by Dr. Sinha or Mr. Patel associated with Plaintiff's conditions, nor does he explain how the ALJ erred in this regard or how the outcome was affected by the alleged error. *See Plaintiff's Reply*, ECF No. 39, p. 5. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff goes on to note the treatment provided by and findings of Igor Zilberman, M.D., and Stephen J. Conte, D.O. *Plaintiff's Reply*, ECF No. 39, p. 5. The ALJ also considered this evidence and noted further that Dr. Zilberman's finding of handgrip strength (4+/5) appeared to be due to Plaintiff's effort. R. 15−16, 309. Like Plaintiff, *see Plaintiff's Reply*, ECF No. 39, p. 5, the ALJ went on to note that the MRI performed on January 13, 2014, revealed a disc herniation at L4-5 and L5-S1 associated with an annular tear. R. 16, 311. Although Plaintiff points to the additional finding from the MRI that there was a straightening of the normal lordotic curve suggestive of muscle spasms and lumbar myalgia that the ALJ did not specifically mention, *Plaintiff's Reply*, ECF No. 39, p. 5; R. 16, 311, the ALJ nevertheless explicitly considered the

---

[11] Plaintiff misidentified Minesh Patel as a treating physician instead of a physician's assistant. *Id*. Under the applicable regulation effective at the time the ALJ rendered her decision, physician's assistants were not "acceptable medical sources," but rather "other medical sources." 20 C.F.R. § 416.913(a), (d)(1) (eff. Sept. 3, 2013 to Mar. 26, 2017).

MRI from January 13, 2013. *See id*. Plaintiff also contends that another physician's referral of Plaintiff to a neurosurgeon (discussed in more detail below) for neck and back pain "show[s] Dr. Zilberman['s] . . . concern of a serious orthopedic condition, contrary to the misrepresentation by the ALJ (Tr. 15−16, 326)." *Plaintiff's Reply*, ECF No. 39, p. 5. However, both Plaintiff and the ALJ agreed that Plaintiff was treated with medication for his condition. *Id.*; R. 16. The ALJ further noted that when Plaintiff was seen by another physician on March 13, 2013, Plaintiff reported that he was doing well. R. 16, 323. Without any additional argument or explanation from Plaintiff regarding any limitations identified by Dr. Zilberman or Dr. Conte or the ALJ's alleged error or how such error harmed him, *see Plaintiff's Reply*, ECF No. 39, p. 5, Plaintiff has not shown that this record requires remand. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff also points to the care provided by Thomas Kreibich, M.D., a neurologist, noting that Dr. Kreibich "reported a stiff-appearing gait, complaints of paresthesia in left lower extremity with decreased sensation and possible carpal tunnel in the arms and decreased sensation in both hands with a tingling sensation[.]" *Plaintiff's Reply*, ECF No. 39, p. 5. Although Plaintiff also argues that these findings and his referral to a neurosurgeon for neck and back pain "show[s] . . . [Dr.] Kreibich's concern of a serious orthopedic concern, contrary to the misrepresentation by the ALJ (Tr. 15−16, 326)[,]" both Plaintiff and the ALJ, as discussed above, agreed that Plaintiff was treated with medication for this condition, *id.*; R. 16, and the ALJ further noted that Plaintiff stated that he was doing well at his examination with Dr. Kreibich on March 13, 2013. R. 16, 323. Again, Plaintiff's failure to identify any limitation associated with his condition found by Dr. Kreibich or any explanation of the ALJ's alleged error or how such error harmed him, *see Plaintiff's Reply*, ECF No. 39, p. 5, does not persuade this

Court that remand based on this record is warranted. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff further notes that neurosurgeons Arien Smith, M.D., and Mostafa El Khashab, M.D., "reviewed his MRI's and concluded that Mr. Ribaudo was not a surgical candidate and should continue with physical therapy and injections. (Tr. [3]59−365). Mr. Ribaudo declined any additional injections as they had not relieved his pain (Id.)." *Plaintiff's Reply*, ECF No. 39, p. 5. Although, as noted above, the ALJ considered Dr. Kreibich's March 13, 2013, evaluation, which specifically addressed Plaintiff's visit with Dr. Smith, R. 16,[12] and the records of Dr. Smith and Dr. El Khashab were included in the ALJ's exhibit list attached to her decision, R. 22, the ALJ did not explicitly discuss these records in her decision. *See generally* R. 10−19. However, as with the other care providers, Plaintiff has not explained how this failure harmed him or how specific discussion of these records would lead to a different result. *See generally Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23; *Plaintiff's Reply*, ECF No. 39. Notably, Plaintiff does not point to any opinion as to limitations and he acknowledges that these physicians concluded that Plaintiff should continue with conservative therapy, *i.e.*, physical therapy and injections, *Plaintiff's Reply*, ECF No. 39, p. 5, which the ALJ specifically considered in her decision. R. 16. As previously discussed, Plaintiff bears the burden of showing that the ALJ's error is harmful and requires remand. *Shinseki*, 556 U.S. at 409−10; *Madera v. Comm'r of Soc. Sec.*, No. CIV.A. 14-3234, 2015 WL 1924587, at *1–2 (D.N.J. Apr. 27, 2015) ("Plaintiff thus

---

[12] Dr. Kreibich noted, *inter alia*, as follows: "He saw Dr. Arien Smith of neurosurgery. He was not satisfied seeing Dr. Smith. He had concerns about Dr. Smith's skill. I assured the patient that I would not have sent him to Dr. Smith if l doubted Dr. Smith's skills. I think Dr. Smith is an excellent neurosurgeon." R. 323. Dr. Kreibich further noted that "Dr. Smith suggested that he might need a closed MRI with sedation. I think that is a reasonable thing to think about as the MRI of the C-spine did not show really good images to look at." *Id.*

25

bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability. . . . Plaintiff has not even attempted to show how the ALJ's alleged errors were harmful to her. Rather, while Plaintiff has attempted to persuade that the ALJ did not follow the law, she has not gone any further."). Accordingly, based on this record, the ALJ's failure to expressly discuss the records of Dr. Smith and Dr. El Khashab is harmless error and does not require remand. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *Padgett*, 2018 WL 1399307, at *2; *cf. Chetoka v. Colvin*, No. CIV.A. 13-941, 2014 WL 295035, at *13 (W.D. Pa. Jan. 27, 2014) ("Although Plaintiff is correct that the ALJ did not provide a discussion of her alleged sleep disturbances, hypertension, and bipolar disorder, this omission was not error. . . . None of the sources that examined Plaintiff or her medical records attributed any limitations to these alleged impairments.").[13]

### E.    Plaintiff's Learning Disabilities

Plaintiff contends that the ALJ erred in her consideration of his "lifelong learning disabilities" and overlooked relevant evidence related to such disabilities. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 18−19; *Plaintiff's Reply*, ECF No. 39, pp. 6−7. Plaintiff's arguments are not well taken.

An impairment meets a listed impairment if it satisfies "'*all* of the specified medical

---

[13] Finally, to the extent that Plaintiff's assertions could be construed as attacking the ALJ's failure to specifically identify the weight assigned to every medical source, *see Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 17−18, Plaintiff has not identified an opinion of functionality from any of the sources discussed above that the ALJ should have weighed. *See Paczkoski v. Colvin*, No. 3:13-CV-01775, 2014 WL 4384684, at *9 (M.D. Pa. Sept. 4, 2014) ("Dr. Singh did not opine that Paczkoski had any specific functional limitations or that he was disabled. . . . Thus, there was no opinion of functionality by Dr. Singh that the ALJ could weigh."). In any event, as discussed in detail above, Plaintiff has not shown how any error in this regard harmed him or would lead to a different outcome.

criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

At the time of the ALJ's decision, Listing 12.05 provided as follows:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2016).

On the Wechsler Intelligence Test for Children ("WISC-R") administered on or around December 1, 1987, when Plaintiff was 12 years old, Plaintiff achieved a full-scale IQ score of 79;  a verbal IQ score of 82; and a performance IQ score of 78. R. 332 (noting further that Plaintiff "cooperated throughout the evaluation and wants to please"). In considering whether Plaintiff met Paragraph B or Paragraph C of Listing 12.05, however, the ALJ stated that the "record is devoid of any I.Q. testing." R. 13. Plaintiff argues that the ALJ's error in overlooking these IQ scores requires remand. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 18–19. This Court disagrees.

Although the ALJ erred in stating that there was no IQ testing in the record, this error was harmless. As set forth above, even if the ALJ considered Plaintiff's IQ scores, Plaintiff does not argue how these scores—a full-scale IQ score of 79; a verbal IQ score of 82; and a performance IQ score of 78—would have met Paragraph B (which requires a valid verbal, performance, or full scale IQ of 59 or less) or Paragraph C (which requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function). *Id*. Plaintiff's failure to explain how this error harmed him or how consideration of these IQ scores would have changed the outcome of this

case undermines his request for remand. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff goes on to argue that the ALJ had a duty to develop the record and should have ordered a consultative examination or additional IQ testing. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 19; *Plaintiff's Reply*, ECF No. 39, pp. 6−7. As previously discussed, however, the ALJ retains the discretion, not the duty, to order a consultative examination. *See* 20 C.F.R. § 416.920b(b)(2)(iii); *see also Thompson*, 45 F. App'x at 149; *Woodside*, 2019 WL 4140993, at *1; *Haganey*, 2019 WL 192901, at *2; *Reliford*, 2017 WL 2829604, at *9. Here, the ALJ reasonably exercised her discretion and decided that she had sufficient information to assess Plaintiff's learning disabilities and to make a disability determination. R. 10, 13−14, 17. Plaintiff does not explain how such consultative examination would have changed the outcome of the ALJ's decision. *See generally Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23; *Plaintiff's Reply*, ECF No. 39. Plaintiff's undeveloped assertion that the ALJ's failure to order a consultative examination therefore does not establish a basis for remand. *Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553; *cf. Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245.

Plaintiff's argument that the ALJ had the duty to order additional IQ testing is equally unavailing. Even though an ALJ retains the duty to "develop a full and fair record in social security cases," *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), "the ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'" *Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). "Moreover, where a claimant is represented by counsel before the ALJ, an

ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it

has clearly prejudiced the claimant.'" *Crocker*, 2017 WL 1181584, at *4 (quoting *Cartagena v.

Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)). Here,

Plaintiff was represented by former counsel in the underlying administrative proceedings,

including at the administrative hearing on August 25, 2015. R. 31–85. Plaintiff's former counsel

never asked the ALJ to order a current IQ test or to keep the record open to obtain additional IQ

testing. *See id*. Moreover, the ALJ specifically considered, *inter alia*, that Plaintiff was able to

independently manage his personal care, R. 13, that he had only mild restrictions in his activities

of daily living and social functioning, R. 14, and that "his previous work has included some

semi-skilled work reflecting a higher mental capacity than accorded" in the ALJ's RFC

determination, R. 17. Based on these circumstances, the Court cannot conclude that the ALJ

erred in failing to order additional IQ testing. *See Gist v. Barnhart*, 67 F. App'x 78, 82 (3d Cir.

2003) (rejecting the plaintiff's argument that remand for, *inter alia*, additional intellectual

function testing was required and clarifying that such remand is required only "where the

medical evidence suggests that a finding of medical equivalence to a listing is reasonable");

*Colombin v. Colvin*, No. CV 16-311, 2017 WL 272029, at *4 (W.D. Pa. Jan. 19, 2017) ("Plaintiff

was represented by counsel at the hearing, yet, during the hearing, his counsel did not ask the

ALJ to order a current IQ test on Plaintiff's behalf or to keep the record open to secure an IQ

test."); *Smith v. Colvin*, No. CV 15-1426, 2016 WL 6729120, at *3 (W.D. Pa. Nov. 15, 2016)

("Yet, at no time did counsel seek to keep the record open to secure a current valid IQ test or ask

the ALJ to order one on Plaintiff's behalf or request any other additional evidence be obtained.").

Finally, Plaintiff points to Dr. Kreibich's evaluation that Plaintiff "had a poor fund of

knowledge," *Plaintiff's Reply*, ECF No. 39, p. 6 (citing R. 325, reflecting an evaluation dated

April 3, 2013), and complains that the ALJ's assigning "little to no credit" to the findings of Marcia Chotiner, L.D.C., in 1987, "who concluded that Mr. Ribaudo's 'attention deficits and lack of ability to stay focused interfere with learning on a consistent basis'" requires remand. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 18–19. However, on the record cited by Plaintiff, Dr. Kreibich noted that Plaintiff's fund of knowledge was only "somewhat impaired[,]" and also noted that Plaintiff's speech was fluent, his memory was intact, and his attention was good. R. 325. Moreover, the ALJ specifically considered Plaintiff's testimony that he finished high school in a special education curriculum due to dyslexia and trouble reading and writing. R. 14. The ALJ appropriately reasoned, however, that while Plaintiff's learning disabilities may impact his ability to perform complex tasks, there was no evidence that he would be unable to perform the simple, repetitive tasks of unskilled work. R. 14 (discussing Plaintiff's learning disabilities and finding moderate difficulties with concentration, persistence or pace and crafting a RFC determination limited to, *inter alia*, simple, routine tasks), 17 (considering further that Plaintiff's history of learning disabilities and that his past work included some semi-skilled work, reflecting a higher mental capacity); *see also Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) ("[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'") (citations omitted); *cf. Pimentel v. Colvin*, No. CV 15-2662, 2016 WL 3456919, at *12 (D.N.J. June 21, 2016) ("A hypothetical question limiting the claimant to simple, routine tasks adequately accounts for moderate limitations in concentration, persistence, or pace."). Based on this record, Plaintiff has not shown harmful error requiring remand. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553.

31

**F.      General Assertions Regarding Steps 2 through 5 of the Sequential Evaluation**

Plaintiff has included a section entitled "Whether The Commissioner, In Adopting The ALJ Decision, Erred In Failing To Evaluate All Of The Plaintiff's Individual And Combined Impairments, Including Severe And Nonsevere Impairments, At Steps 2-5 Of The Commissioner's Sequential Evaluation[.]" *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 19−21. It is not clear what Plaintiff intends to argue in this section. He quotes legal authority regarding the ALJ's duty at the various steps of the sequential evaluation process, particularly regarding step two. *Id*. at 19−20. Plaintiff goes on to summarily repeat his challenges to the ALJ's consideration of treating physicians and the ALJ's alleged failure to develop the record and to order a psychiatric consultative examination. *Id*. at 20−21 (asserting various medical issues but failing to provide any cites to the record). Plaintiff concludes with the following incomplete and conclusory sentence: "Since the ALJ concluded that the Plaintiff's multiple severe and nonsevere impairments, including pain, at Steps 2-5, the ALJ failed to comply with the Commissioner's regulations (at 20 C.F.R. §416.920a and SSR 96-8p) in evaluating his nonexertional impairments and limitations at Steps 3-5." *Id*. at 21. As previously discussed, the "Court does not assemble arguments for a party from fragments[,]" *Padgett*, 2018 WL 1399307, at *2, and need not address undeveloped arguments. *See Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245.

However, to the extent that this argument can be construed as a challenge to the ALJ's step two determination, the argument is not well taken. At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell*

*v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

Here, the ALJ decided in Plaintiff's favor at step two, finding that his carpal tunnel syndrome of the right hand, a learning disability, degenerative disc disease of the cervical spine with mild cervical radiculopathy, a herniated disc at L3-4, an annular tear at L4-5, a right rotator cuff tear, and asthma are severe impairments. R. 12. The ALJ went on to evaluate Plaintiff's impairments through the remainder of the five-step sequential evaluation. R. 13–19. Accordingly, even if the ALJ erred by not finding other severe impairments, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

To the extent that Plaintiff again challenges the ALJ's evaluation of the reports of his treating physicians or the ALJ's failure to order a consultative examination, those arguments are unavailing for the reasons previously discussed. If Plaintiff intends to challenge the ALJ's consideration of Plaintiff's subjective complaints, RFC determination, and step five

determination, the Court notes that Plaintiff has advanced separate sections on those issues, which are addressed later in this Opinion and Order.

### G.    Subjective Complaints

Plaintiff challenges the ALJ's consideration of his subjective complaints, arguing that the ALJ failed to properly evaluate his complaints of pain, which he contends are supported by the medical record. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 21–24; *Plaintiff's Reply*, ECF No. 39, p. 6. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ

34

considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[14]

Here, the ALJ followed this two-step evaluation process.  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 16. The ALJ also detailed years of record evidence, reflecting, *inter alia*, 5/5 strength throughout, 4+/5 handgrip strength that seemed to be due to effort, daily activities including

---

[14]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

caring for a pet, doing the laundry, driving a car, shaving with his left hand, watching television, watching his son play football, and cleaning the backyard, improvement with conservative therapy, and Plaintiff's statements that medication helped him significantly and that he was doing well. R. 14–17.

Plaintiff, however, challenges the ALJ's evaluation of his complaints of neck and back pain, which reads as follows:

> In terms of the claimant's alleged back and neck pain, the evidence fails to support his assertions of disability. The claimant testified that he has a history of low back pain. While diagnostic testing showed degenerative disc disease and herniated discs in the lumbar and cervical spines, as evidenced on MRI testing, the claimant's doctors felt that conservative therapy was adequate to treat his symptoms (Exhibit 1F, 3F, 4F, 5F, 6F). Although the claimant failed to report any significant pain relief after his epidural injections, records from the New Jersey Neurological Associates indicate that the claimant reported improvement in his symptoms with opioid medications, and, during a March 13, 2013 visit, the claimant stated that he was doing well (Exhibits 5F, 6F). Of note, this is consistent with the claimant's assertions in a November 2012 Function Report that he was able to take care of his pet, do the laundry, drive a car and clean the backyard (Exhibit 3E).
>
> The claimant's allegations of significant limitations in sitting are not supported by the record to the degree alleged. At the hearing, the claimant testified that he could not sit or stand for more than five minutes. However, he sat through the forty-five minute hearing in no obvious discomfort and he testified that he spends the day sitting in a recliner "just watching television" and also watches his sons play football, activities that usually involve prolonged sitting. Although the claimant may have some limitation standing and walking for prolonged periods due to back pain, there is no evidence that he could not perform the demands of sedentary work.

R. 16–17. Plaintiff complains that the ALJ discounted his complaints of neck and back pain because of activities he described in his function report and hearing testimony as well as his behavior at the hearing. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 22–23. However, the ALJ properly considered Plaintiff's testimony and statements in his function report regarding activities that belied Plaintiff's allegations of significant limitations in his back and neck. *See* 20 C.F.R. § 416.929(c)(i) (providing that the ALJ may consider a claimant's daily

activities); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 146 (3d Cir. 2007)

("Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that

some or all of the claimant's testimony about her limitations or symptoms is less than fully

credible."); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) ("We would ordinarily defer to

an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a

witness's demeanor."); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at

*4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition

that "[a]lthough 'any statements of the individual concerning his or her symptoms must be

carefully considered,' the ALJ is not required to credit them," particularly where such statements

are undermined by evidence of a more active lifestyle.") (quoting *Chandler v. Comm'r*, 667 F.3d

356, 363 (3d Cir. 2011)); *Houck v. Colvin*, No. 1:14-CV-02212, 2016 WL 1271331, at *10

(M.D. Pa. Mar. 31, 2016) (approving ALJ's consideration that the plaintiff's testimony was

inconsistent with statements in her function report); *Holley v. Colvin*, 975 F. Supp. 2d 467, 480–

81 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014)

(finding no error in the ALJ's consideration of the plaintiff's ability to sit through a 65-minute

hearing where the ALJ's observations did not serve as the "sole basis" for his assessment of the

plaintiff's subjective complaints); SSR 16-3p ("[W]e will compare statements an individual

makes in connection with the individual's claim for disability benefits with any existing

statements the individual made under other circumstances" and "The adjudicator will consider

any personal observations of the individual in terms of how consistent those observations are

with the individual's statements about his or her symptoms as well as with all of the evidence in

the file")).

    Plaintiff also complains that the ALJ "wrongfully discredited" Plaintiff's subjective

complaints that he could not reach in any direction because he testified at the hearing that he could reach for a tissue in front of him, and discredited the severity of his carpal tunnel syndrome because of a weakened grip strength. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 22−23. The Court disagrees with Plaintiff's characterization of the ALJ's consideration of these complaints. The ALJ reasonably considered Plaintiff's daily activities, inconsistent testimony, and medical records reflecting near full grip strength and a lack of effort when discounting the extremity of these complaints:

> The claimant conveyed that he had an accident moving a Christmas tree, and in 2009, he was hit in the head and injured his right shoulder. Mr. Ribaudo testified that he could not lift more than five pounds with his arm; maybe lift five pounds with both arms; and that he cannot reach in any direction. However, he later related that could reach for the tissue in front of him at the hearing. He stated that he is unable to sit for more than five minutes. When asked about his activities of daily living, the claimant testified that he shaves his head with his left hand; spends the day sitting down in a recliner; and watches television all day. When he visits with his sons, he watches them play football. . . .

> The claimant's shoulder impairment does not preclude work related activity. The evidence indicates that the claimant had a history of a right rotator cuff tear that eventually required surgical intervention in September 2014 without complication (Exhibit 9F). The claimant testified that he could maybe lift five pounds with both arms and that he could not reach in any direction due to his shoulder surgery. However, he later testified that he could reach for the box of tissues directly in front of him during the hearing. Nonetheless, I have taken the claimant's history of shoulder surgery and subjective complaints regarding his ability to lift, carry and reach into consideration in finding that he could lift and carry no more than five pounds, with no reaching overhead with the with the non-dominant arm, frequent reaching overhead with the dominant arm, and frequent reaching in all other directions with both arms, as set forth in the above-fashioned residual functional capacity.

> The claimant's carpal tunnel syndrome does not support a finding of disability. The record indicates that the claimant has a history of bilateral carpal tunnel syndrome, the right greater than the left, as evidenced on a February 2012 EMG. However, during a January 13, 2013 examination, the claimant's grip strength was 4+/5, which seemed to be due to effort (Exhibit 5F).

R. 16−17. The Court finds no error with the ALJ's assessment in this regard. *See Salles*, 229 F.

App'x at 146; *Loneker*, 2018 WL 5784996, at *4; *Weidman v. Colvin*, 164 F. Supp. 3d 650, 657

(M.D. Pa. 2015) (finding "ample support" for ALJ's credibility determination where, *inter alia*,

the ALJ identified "'several occasions where the claimant gave poor effort'") (citations omitted);

*Herman v. Colvin*, No. CIV.A. 12-6640, 2013 WL 6909915, at *8 (D.N.J. Dec. 31, 2013) (noting

that 4 to 5 out of 5 represents "full or near full strength"); *Holmes v. Astrue*, No. CIV.A. 08-

4624, 2010 WL 1730834, at *10 (E.D. Pa. Apr. 28, 2010) (overruling objections to adverse

credibility determination where, *inter alia*, the plaintiff "demonstrated submaximal effort during

a functional capacity evaluation"). Plaintiff nevertheless goes on to complain that "the ALJ

quizzically concluded that he could not reach overhead with the left arm but he could reach

overhead frequently with the right arm[.]" *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No.

23, p. 23. Plaintiff, however, mischaracterizes the ALJ's finding, which properly took into

account that Plaintiff was left hand dominant. R. 17 (assigning a RFC with "no reaching

overhead with the with the non-dominant arm, frequent reaching overhead with the dominant

arm"); *see also* R. 59 (reflecting Plaintiff's hearing testimony that he is left-handed).

Plaintiff further complains that the ALJ failed to evaluate his sarcoidosis. *Plaintiff's Brief

Pursuant to Local Rule 9.1*, ECF No. 23, p. 23. However, as previously discussed, an ALJ is not

expected "to make reference to every relevant treatment note in a case[,]" *Fargnoli*, 247 F.3d at

42, and the ALJ may overlook evidence that is "neither pertinent, relevant nor probative."

*Johnson*, 529 F.3d at 204. Here, Plaintiff argues only that the ALJ failed to discuss his

sarcoidosis without any explanation of why this omission undermines the ALJ's assessment of

his subjective complaints or results in any functional limitations. *See Plaintiff's Brief Pursuant to

Local Rule 9.1*, ECF No. 23, p. 23. Notably, "[a] diagnosis alone . . . does not demonstrate

disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition*

*of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff's undeveloped argument therefore will not serve as a basis for remand. *Id.*; *see also Shinseki*, 556 U.S. at 409–10; *Atkins*, 2020 WL 1970531, at *4; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff also complains that the ALJ incorrectly referred to an AIDS diagnosis. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 23. Plaintiff is correct that, at the administrative hearing, the ALJ unfortunately and erroneously referred to Plaintiff having an AIDS diagnosis. R. 37–39. However, Plaintiff quickly corrected the ALJ, *id.*, who apologized for the incorrect reference and made "it clear on the record that that is not one of your diagnoses." R. 39. As Defendant points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 27, p. 27, there is no indication in the ALJ's decision that this error affected in any way her determination. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 2020 WL 1970531, at *4; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff goes on to repeat complaints relating to his subpoena requests, the ALJ's failure to order additional consultative examinations, and his mental issues, *see Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 23–24, but those arguments are unavailing for the reasons previously discussed.

Finally, Plaintiff challenges, cursorily and for the first time in his *Reply,* the state agency physicians' finding that he has the capacity to perform light work, arguing generally that these physicians did not have all the records available to them. *Plaintiff's Reply*, ECF No. 39, p. 6. However, as discussed earlier in this Opinion and Order, the Court need not address arguments

raised for the first time in a reply brief. *See Kolodesh*, 787 F.3d at 230 n.3; *Pelullo*, 399 F.3d at 222; *Wright*, 2016 WL 5429649, at *5. Moreover, the Court notes that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Accordingly, "'it is not unexpected that the ALJ may have more evidence to review than the state agency did.'" *Suarez v. Comm'r of Soc. Sec.*, No. 3:16-CV-02732, 2018 WL 2059553, at *8 (D.N.J. May 3, 2018) (quoting *Golzak v. Colvin*, No. 3:12CV2247, 2014 WL 980752, at *10 (M.D. Pa. Mar. 13, 2014)). In any event, even if there was some error, the ALJ ultimately fashioned a RFC for a limited range of sedentary exertion that was more restrictive than the findings of these state agency physicians. *Compare* R. 92–95, 102–105, *with* R. 14; *see also Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553; *cf. Money v. Barnhart*, 91 F. App'x 210, 214 (3d Cir. 2004) (finding error at step four harmless where "the ALJ still came to a conclusion favorable to [the claimant]").

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning when assessing Plaintiff's subjective complaints, and the ALJ's findings in that regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited

41

Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### H.    RFC

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 24−27; *Plaintiff's Reply*, ECF No. 39, pp. 4−6. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain additional limitations:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as define in 20 CFR 416.967(a) except the claimant can only lift five pounds; perform no greater than simple, routine tasks; have no exposure to environmental pollutants, and only

> occasional exposure to temperature extremes; with no reaching overhead with the
> with the non-dominant arm; frequent reaching overhead with the dominant arm;
> and frequent reaching in all other directions with both arms.

R. 14. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*,, 5/5 strength throughout, 4+/5 handgrip strength that seemed to be due to effort, daily activities that included caring for a pet, doing the laundry, driving a car, shaving with his left hand, watching television, watching his son play football, and cleaning the backyard, surgery on his right shoulder without complication and improvement with conservative therapy, and noted that Plaintiff's symptoms improved with medication, and that the limiting effects of his symptoms have been inconsistent. R. 15–17. The record unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff argues that this RFC determination lacks substantial support for a number of reasons, *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 24–27; *Plaintiff's Reply*, ECF No. 39, pp. 4–6, none of which are meritorious. For example, Plaintiff complains that the RFC "finding is not supported by substantial evidence relating to his right shoulder post-surgical residuals, cervical radiculopathy, and carpal tunnel syndrome in his right hand." *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 25 (providing no citation to the record); *see also Plaintiff's Reply*, ECF No. 39, p. 5. However, as previously discussed, the ALJ carefully considered these conditions and Plaintiff's subjective complaints when fashioning the RFC, specifically explaining how the medical records, Plaintiff's daily activities, and Plaintiff's inconsistent statements undermined the Plaintiff's alleged extreme limitations. Moreover, a mere diagnosis or condition does not establish functional limitations or entitlement to benefits; instead, a plaintiff must show that his conditions significantly limit his "physical or mental ability to do

basic work activities." *Foley*, 349 F. App'x at 808; *see also Phillips*, 91 F. App'x at 780. Plaintiff

has not satisfied this requirement. Moreover, an ALJ need include only "credibly established"

limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the

record." *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115, 2014 WL

4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do

not exist, or which cannot be found in the medical record. No specific functional limitations were

provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]")

(internal citation and quotation marks omitted).

Plaintiff also asserts that the ALJ "erred in failing to discuss or evaluate Mr. Ribaudo's

two herniated lumbar discs and his complaints of pain and difficulty sitting for an extended

length of time simply because she observed him sit for 45 minutes at the hearing." *Plaintiff's

Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 25; *see also id.* at 26−27; *Plaintiff's Reply*,

ECF No. 39, p. 5. To the contrary, the ALJ specifically considered Plaintiff's herniated lumbar

discs and purported difficulty sitting for prolonged periods of time. R. 16−17. Moreover,

Plaintiff's argument mischaracterizes the ALJ's analysis in this regard: As discussed in detail

above, the ALJ's observation at the hearing was but one of a number of factors that the ALJ took

into account in her consideration of Plaintiff's subjective complaints regarding his ability to sit

and in her crafting of the RFC determination. *Id*.

Plaintiff further argues, without citation to the record, that the ALJ erred by failing to

take into consideration his "poor memory or any deficits he had with concentration, persistence

or pace[.]" *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 26. However, as

previously discussed, the ALJ addressed these issues and took them into consideration when

fashioning the RFC, which reasonably included a limitation to simple, routine work. R. 14, 16−

17; *see also* R. 325 (reflecting Dr. Kreibich's finding that Plaintiff's memory was "intact"). In

any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that

would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied."

*Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v.*

*Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own

factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc.*

*Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon

situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that

conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff goes on to complain that the ALJ failed to consider his sarcoiditis when

fashioning the RFC, but he does not identify what purported restrictions the ALJ should have

included. *See Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, p. 27. Other than

Plaintiff's own conclusory assertion in this regard, there is no record evidence of limitations

resulting from this condition. Accordingly, Plaintiff's unsupported speculation that the ALJ

should have included some unidentified restrictions in the RFC is unavailing. *See Rutherford*,

399 F.3d at 554.

In short, the Court concludes that the ALJ's RFC determination is consistent with the

record evidence and enjoys substantial support in the record.

## I.    Hypothetical Questions to Vocational Expert

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the

hypothetical posed to the vocational expert, which included the ALJ's RFC determination, failed

to include all of Plaintiff's limitations. *Plaintiff's Brief Pursuant to Local Rule 9.1*, ECF No. 23, pp. 27–28. Plaintiff's argument is not well taken.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 416.960(b)(2). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). Finally, a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

Here, the ALJ's hypothetical question posed to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 14, 81–82. The vocational expert responded that the jobs of final assembler of nonprescription optical goods and lens

46

inserter of non-prescription eyewear would be appropriate for such an individual. R. 82–83. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions to the vocational expert is that all his alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

**V.      CONCLUSION**

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  August 28, 2020                          *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE